JUDGMENTS: Judgments affirmed
ATTORNEYS:
 OPINION
Peggy Smith, the natural mother of four-year-old twins, Kevin and Tevin Smith, appeals the judgments of the Common Pleas Court of Allen County, Juvenile Division, granting permanent custody of her children to the Allen County Children's Services Board ("ACCSB"). We note that the cases were consolidated for purposes of the custody hearing and have similarly been joined in the instant proceeding. For the reasons expressed in the following opinion, we affirm the judgments of the trial court.
The record reveals that the twins have had a lengthy history with ACCSB. Immediately following their December 23, 1994 birth, the agency placed the boys into foster care due to concerns that Peggy, who was eighteen years old at the time, could not properly care for the children. Kevin and Tevin were returned to their mother shortly thereafter. However, the agency again became involved with the family in January 1995, when the children were adjudicated dependent and neglected. As a result, ACCSB obtained temporary custody of the boys and developed a case plan to assist Peggy in reunifying herself with the twins. The mother attempted to comply with the case plan with respect to providing a stable home environment for the children. ACCSB eventually returned the boys to Peggy's custody in the spring of 1996 under the conditions of protective supervision.
The instant cases began on May 1, 1997, with an emergency shelter care hearing, which was prompted by observations made by an ACCSB case worker the previous morning that the children were living in unsanitary, dangerous conditions without adequate supervision. The trial court found probable cause to take the boys into emergency custody. ACCSB then filed a complaint for dependency and neglect on the same day. On June 24, 1997, the court conducted a hearing on the complaint, adjudicated Kevin and Tevin dependent and neglected and again ordered the boys' under the protective supervision of ACCSB.
Approximately two months later, on August 7, 1997, the agency requested another shelter care hearing. This time, the request was brought about when a case worker attempted to make a home visit and found the children near an open second story window, apparently trying to wake their mother from a nap. After unsuccessful efforts to awaken Peggy, the case worker alerted the Lima Police Department. Peggy finally responded after an officer pounded on the door for about thirty minutes. Based upon this evidence, the trial court found probable cause to place the children in emergency care. Thereafter, ACCSB filed a motion to modify the existing order of protective supervision to one of temporary custody.
On October 29, 1997, the trial court issued a judgment entry modifying the order from protective supervision to temporary custody. Kevin and Tevin were then placed into a foster home for the second time since their birth. On June 28, 1998, ACCSB filed a motion to extend the temporary custody to allow Peggy more time to comply with the case plan with regard to psychological care and the improvement of parenting skills. The court granted the motion to extend. However, in September 1998, due to the history of the case and the fact that Peggy was not adequately fulfilling the terms of the case plan, ACCSB moved for permanent custody pursuant to R.C. 2151.413 and 2151.414.
A hearing on the motion took place in December, 1998 and February, 1999. It should be noted that the boys' father, Paul Chaney, was not present at this or any of the previous hearings and he did not involve himself in ACCSB's efforts to reunify the family. After taking the matter under advisement, the trial court found, among other things, that the parents demonstrated a lack of commitment toward the twins; that they failed to comply with the case plans; that they failed to adequately remedy the circumstances that caused the children to be removed in the first place; and that termination of parental rights was in Kevin and Tevin's best interest. The judgment entry granting permanent custody to ACCSB was filed on February 24, 1999. Peggy Smith subsequently filed this appeal, asserting two assignments of error for our review and consideration. Since both assignments of error raise similar issues, we have elected to discuss them together.
 Assignment of Error I Whether the finding for permanent custody of the Juvenile Court is supported by clear and convincing evidence and/or is against the manifest weight of the evidence.
 Assignment of Error II Whether the trial court erred in determining that it was in the best interest of the minor children to grant permanent custody to Allen County Children [sic] Services Board.
When resolving the issue of whether to grant permanent custody to an agency such as ACCSB, the trial court acts pursuant to R.C. 2151.414(B), which provides, in pertinent part:
 The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
Accordingly, if the evidence is clear that the children have not been abandoned or orphaned, as in this case, the court must apply a two-pronged test to decide whether the parental rights should be terminated and permanent custody should be vested with the agency. First, the court must consider the best interest of the child and secondly, the court must decide whether the child cannot or should not be placed with either of his parents. Our initial discussion will focus on the trial court's finding that it was in Kevin and Tevin's best interest to permanently place them in ACCSB's custody.
R.C. 2151.414(D) states:
 In determining the best interest of a child at a hearing held [on the matter of permanent custody] * * *, the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem * * *;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
R.C. 2151.414(B) mandates that the trial court's finding concerning the child's best interest be supported by clear and convincing evidence. "Clear and convincing evidence is that which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." In re Weaver (1992), 79 Ohio App.3d 59, 64, 606 N.E.2d 1011.
With respect to the relationship between the twins and their mother, the record reveals that Peggy does not physically abuse the boys and she seems to love and provide them with adequate affection. However, Bonnie Klausing, Kevin and Tevin's foster mother, testified that the children often do not want to visit with Peggy. Klausing stated that before and after a visit with their mother, the children will cry and "act out of sorts", which includes acting angry, hitting each other and wetting the bed.
Next, we must analyze the wishes of the children. In this case, attorney Mark Van Dyne was assigned to act as guardian ad litem for the boys. Van Dyne filed a recommendation with the court that was based upon several home visits, interviews and the evidence taken during the hearing. In ultimately concluding that ACCSB should receive permanent custody of the boys, Van Dyne highlighted several points of concern, such as the physical danger that the twins often faced because their mother allowed them to play near hazards like open windows, knives and railroad tracks. The guardian also expressed his concern over the unsanitary condition of Peggy's home in that dirty dishes are frequently left lying around the apartment, large amounts of garbage accumulate in the corner and the boys often wear unclean clothing. Although Van Dyne acknowledged that this mother loves her children and that conditions have somewhat improved, he emphasized Peggy's inconsistent behavior and her inability to maintain her home and parenting skills at an acceptable level over an extended period of time.
Third, we must examine the custodial history of Tevin and Kevin Smith. The records provided to this court clearly illustrate that ACCSB has been involved in the twins' lives since the day they were born. The boys have been adjudicated neglected and dependent twice in the past; they have been taken into emergency shelter care on several occasions and they have been in foster care for more than a year.
Finally, R.C. 2151.414(D)(4) mandates the consideration of the boys' need for a permanent home and whether that can be achieved without granting custody to ACCSB. Certainly, Kevin and Tevin require legally secure placement at this point, especially since they have been experiencing turmoil in their home lives since infancy. Nonetheless, the record indicates that that type of placement cannot occur without ACCSB receiving permanent custody.
Dr. Thomas Hustak, a clinical and forensic psychologist who evaluated Peggy's ability to parent, along with her mental and emotional status, testified that Peggy is "not ready to grow up yet". In fact, Peggy even stated to Dr. Hustak during a counseling session that she feels extremely overwhelmed and, at times, does not want to raise her children. These feelings, coupled with the fact that Peggy also exhibits a personality characterized by low self-esteem, ambivalence and impulsiveness, prompted Dr. Hustak to predict that Peggy would need at least one to two years of intense therapy before she would be able to effectively parent her children. Furthermore, the evidence indicates that the children's father is not interested in becoming involved in their lives and none of Peggy's relatives are willing to take care of the boys. Thus, the children's needs cannot be fulfilled without ACCSB's intervention.
Based upon the foregoing, we find that the trial court's decision that it was in the best interest of the children to grant permanent custody to ACCSB is supported by clear and convincing evidence. We now turn our attention to the issue of whether the trial court erred in finding that the twins cannot or should not be placed with either parent.
R.C. 2151.414(E) states, in relevant part:
 In determining at a [permanent custody] hearing * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.
In making its final custody determination, the trial court found both of these provisions of R.C. 2151.414(E) applicable. For the following reasons, we agree with the court's decision.
With respect to R.C. 2151.414(E)(1), the record demonstrates, by clear and convincing evidence, that the twins' parents have failed to "substantially remedy the conditions causing the child to be placed outside the child's home." The record is apparent that the children's father, Paul Chaney, has had virtually nothing to do with the family since ACCSB became involved even though he was aware of Tevin and Kevin's situation. Moreover, the testimony adduced at the hearing illustrates that although the sanitary conditions of Peggy's home have improved somewhat, other problems continue.
Vicki Grace, an ACCSB Family Aide Assistant, testified that she and Peggy were to meet once a week to go over various parenting and housekeeping skills. However, despite efforts to work around Peggy's employment schedules, Grace stated that the two have met only twice since June 1998. Grace stated that Peggy continues to have problems with adequately supervising Kevin and Tevin and that they are still exposed to various safety hazards in their everyday lives. As a result of Peggy's behavior, Grace testified that she seriously questions this mother's ability to parent her children.
In addition, ACCSB case worker, Penny Gillette, testified that in the summer of 1998, Peggy communicated to her that she wanted to give up custody of the boys, but when she found out that the foster parents had no interest in adopting Kevin and Tevin, the mother changed her mind. Meanwhile, Peggy's behavior did not change. Gillette stated that Peggy has failed to comply with the case plan since the spring of 1998 in that she has refused to follow through with counseling recommendations, has not fulfilled the Family Aide requirements and has missed several scheduled visitations with the boys.
Furthermore, Dr. Hustak's testimony, which was previously discussed, is germane to this issue. Particularly, the doctor's statements that Peggy is ambivalent when it comes to relationships and that she finds it very difficult to handle the boys, indicates that she will not remedy the home conditions any time in the near future. Indeed, Dr. Hustak stated that Peggy still acts like a child herself and that, in his opinion, she would not be an effective parent without ample time and a significant amount of intense therapy.
Based upon the foregoing, we conclude that the trial court did not err in finding that R.C. 2151.414(E)(1) applies to this case. We note that although the court also found R.C.2151.414(E)(4) relevant, we find it unnecessary to provide an analysis of this subsection. According to In re William S. (1996), 75 Ohio St.3d 95, 661 N.E.2d 738, syllabus, the trial court's determination that the children cannot or should not be placed with either parent need only be based on one of the factors enumerated in R.C. 2151.414(E). Since we have found that the trial court's finding with respect to R.C. 2151.414(E)(1) is supported by clear and convincing evidence, our analysis may appropriately end.
Accordingly, Peggy Smith's first and second assignments of error are overruled.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgments of the trial court are hereby affirmed.
Judgments affirmed.
BRYANT, P.J., and SHAW, J., concur.